UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| HENRY VARGAS,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>ROBERT MEEHAN, et al.,<br><br>　　　　　　Defendants. | Civ. No. 11-2833 (KM) (JBC)<br><br>OPINION |

**KEVIN MCNULTY, U.S.D.J.:**

　　The plaintiff, Henry Vargas, brought this action against the defendants, Robert Meehan, Jeff Camiscioli, Officer Drelic, Kevin Amos and Robert Andrezzi (collectively, "Garfield Officers") and John Doe Assistant Bergen County Prosecutor, for violations of his constitutional rights under 42 U.S.C. § 1983 and the New Jersey Civil Rights Act, N.J.S.A. 10:6-1 et seq. The complaint alleges that the Garfield Officers subjected Vargas to unlawful arrests, searches and seizures and police stops as part of a pattern of harassment with the aim of keeping Vargas quiet about the alleged illegal activities of Amos's son, also an officer with the Garfield Police Department. Now before the court is the Garfield Officers' motion for summary judgment. (Dkt. No. 54) For the reasons expressed below, the motion will be granted.

### I.　BACKGROUND

　　In the first half of 2007, Vargas lived at 63-65 Cadmus Avenue in Elmwood Park, New Jersey, in an apartment with Jonathan Dicrezencio and Mark Amos, the son of Defendant Kevin Amos. (Dft. SOF ¶ 3) At that time, Defendant Amos was Deputy Chief in the Garfield Police Department. (*Id.*) In May 2007, following a lengthy investigation by the Passaic County Prosecutor's office, Vargas and his roommate, Jonathan DiCrezencio, were arrested on charges of possession of marijuana in the second degree. (Dft. SOF ¶ 4) A

1

search warrant was issued for Vargas's apartment. (*Id.*) Vargas eventually pled guilty to possession in the third degree and was placed on probation. (*Id.* ¶ 8; Certification of Henry Vargas, Dkt. No. 55 ("Vargas Cert.") ¶ 5)

Days before the arrest, Mark Amos unexpectedly moved out of the apartment. (*Id.* ¶ 5) Mark Amos was never arrested or charged with the drug offenses with which Vargas was charged, nor was there mention of him on the search warrant. (*Id.* ¶ 6) A month later, in June 2007, Mark Amos became an officer in the Garfield Police Department. (*Id.* ¶ 7)

Following the May 2007 arrest, Vargas contends that the Garfield Officers, directed by then-Chief Andrezzi and then-Deputy Chief Amos, began a course of harassment, intimidation and retaliation against him. (*Id.* ¶ 9) This course of conduct included numerous traffic stops and two arrests. (*Id.* ¶ 10e) One such arrest occurred on September 28, 2007, when Defendant Camiscioli stopped Vargas because he was double-parked in an area where there was zero-tolerance for double-parking. (*Id.* ¶¶ 10a, 15) Vargas apparently argued with Camiscioli about the reasons for the stop and cursed at the officer, who had been warned prior to this interaction to "watch [his] back" with respect to Vargas. (*Id.* ¶¶ 13-14; Vargas Cert. ¶ 8) Camiscioli saw a baseball bat in the backseat and ordered Vargas out of the car. (*Id.* ¶ 16) When Vargas refused to get out of the car, Camiscioli arrested Vargas for obstruction of justice and unlawful possession of a weapon. (*Id.* ¶¶ 10b, 17) The other arrest occurred in June 2008, when Defendant Meehan arrested Vargas for aggravated assault. (*Id.* ¶10c) Vargas contends that he happened upon a street fight between two rival groups and that he joined in to assist the Garfield police officer who had reported to the scene. (*Id.* ¶ 23) Officer Meehan testified that Vargas struck him in the head with a rock, leading to the arrest on an aggravated assault charge. (*Id.* ¶ 24)

During this time, Vargas surreptitiously recorded certain Garfield police officers, and according to him, those officers acknowledged that Vargas was arrested or stopped on false pretenses because of his affiliation with Mark

Amos. Vargas also alleged that his attorney brought the recordings to the attention of the Bergen County Prosecutor's Office, which failed to present that allegedly exculpatory evidence to the Grand Jury.

Vargas filed his complaint on May 18, 2011. (Dkt. No. 1) The complaint asserts nine causes of action, including causes of action under Section 1983, and separately, under the New Jersey Civil Rights Act, for the September 2007 and May 2008 arrests and "constant harassment," as well as a cause of action against the John Doe prosecutor for failing to present exculpatory evidence, and a cause of action sounding in conspiracy. The Garfield Officers answered on July 22, 2011. (Dkt. No. 10) The Garfield Officers then moved for judgment on the pleadings on January 9, 2012, on the grounds that the claims were time-barred under the governing two-year statute of limitations, and Vargas cross-moved to amend his complaint to demonstrate that the wrongful conduct extended into 2009. (Dkt. Nos. 14, 16) By Opinion dated May 22, 2012, Judge Cecchi denied the Garfield Officers' motion and granted Vargas leave to amend his complaint. (Dkt. No. 19) Vargas filed the Amended Complaint on May 23, 2012, and the Garfield Officers answered on June 1, 2012. (Dkt. Nos. 21, 22) Discovery thereafter commenced.

The Garfield Officers filed this motion for summary judgment on September 8, 2014. (Dkt. No. 54) Vargas submitted a Counterstatement of Facts and a Certification of Henry Vargas in opposition to the defendants' motion on November 24, 2014, after the deadline for opposing the motion had passed and without seeking an extension of time to respond from the court. (Dkt Nos. 55, 56) Vargas also did not include a brief in opposition to legal arguments made in the Garfield Officers' motion for summary judgment. The Garfield Officers filed their reply brief on December 5, 2014. (Dkt. No. 59)

## II. JURISDICTION

This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. §§ 1331 and 1367 as the case presents questions under a federal statute, 42 U.S.C. § 1983, and pendent state law claims.

3

## III. LEGAL STANDARDS

### a. Summary Judgment Standard

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Kreschollek v. S. Stevedoring Co.*, 223 F.3d 202, 204 (3d Cir. 2000). In deciding a motion for summary judgment, a court must construe all facts and inferences in the light most favorable to the nonmoving party. *See Boyle v. Cnty. of Allegheny Pa.*, 139 F.3d 386, 393 (3d Cir. 1998). The moving party bears the burden of establishing that no genuine issue of material fact remains. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof ... the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.

Once the moving party has met that threshold burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party must present actual evidence that creates a genuine issue as to a material fact for trial. *Anderson*, 477 U.S. at 248; *see also* Fed. R. Civ. P. 56(c) (setting forth types of evidence on which nonmoving party must rely to support its assertion that genuine issues of material fact exist). "[U]nsupported allegations ... and pleadings are insufficient to repel summary judgment." *Schoch v. First Fid. Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990); *see also Gleason v. Norwest Mortg., Inc.*, 243 F.3d 130, 138 (3d Cir. 2001) ("A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial."). If the nonmoving party has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party

4

will bear the burden of proof at trial, ... there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992) (quoting *Celotex*, 477 U.S. at 322–23).

### b. Statute of Limitations

Section 1983 claims, and their State analogues under the New Jersey Civil Rights Act, are subject to New Jersey's two-year statute of limitations for personal injury actions. *See Patyrak v. Apgar*, 511 F. App'x 193, 195 (3d Cir. 2013) (per curiam) (citing *Dique v. N.J. State Police*, 603 F.3d 181, 185 (3d Cir. 2010)). "Under federal law, a cause of action accrues, and the statute of limitations begins to run when the plaintiff knew or should have known of the injury upon which its action is based." *Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009) (internal quotation marks and citations omitted). "As a general matter, a cause of action accrues at the time of the last event necessary to complete the tort, usually at the time the plaintiff suffers an injury." *Id.* (citing *United States v. Kubrick*, 444 U.S. 111, 120 (1979)).

### IV. ANALYSIS

Vargas filed his federal complaint on May 18, 2011. The two year statute of limitations would therefore bar any cause of action that accrued before May 18, 2009. The last clearly dated event was Vargas's arrest for aggravated assault in June 2008, well outside of the two year limitations period. Even if I broadly construe the complaint to allege that vehicle stops occurred throughout 2008 (*i.e.,* that they might have continued until December 31, 2008), the claims would be untimely. I also find that the continuing violation doctrine is inapplicable to this action.

### A.   Acts after May 18, 2009

The limitations period, as stated, runs from May 18, 2009. In his Amended Complaint, Vargas makes only limited allegations of activity at any time in 2009. And these turn out to have no evidentiary support.

*Drelic, Camiscioli, and Meehan.* In his deposition, Vargas admitted that the last times he was stopped or otherwise harassed by Defendants Drelic, Camiscioli, and Meehan were in 2008. (Vargas Dep. 85:11-18 (noting that the last time Vargas was stopped by Officer Drelic was in May 2008); 118:22-15 (noting that the last incident with Officer Camiscioli was in September 2007); 177:21-178:3 (noting that the last incident with Officer Meehan was in June 2008)) Those acts fell well outside the limitations period.

*Amos and Andrezzi.* The amended complaint alleges that the actions of Amos and Andrezzi "continued up through and beyond May 28, 2009." (Amended Compl. ¶ 28A) In response to a summary judgment motion, however, the plaintiff cannot rest on the allegations of his complaint; he must come forward with some evidence. *See* p. 4, *supra*, and cases cited. Vargas has failed to do so.

Vargas has admitted in response to interrogatories that Andrezzi's involvement "stopped when he retired." (Ex. G, Response to Interrogatory No. 20) It is uncontested that Andrezzi retired in April 2008, over a year outside the limitations period. (Cert. of Daniel R. Bevere, Esq. in Support of Motion for Summary Judgment, Ex. F. Andrezzi Dep 6:19-20; *see also* Ex. A Vargas Dep. 189:18-19 (acknowledging that Andrezzi had retired by the time Vargas's attorney wrote to the Garfield Police about the alleged course of harassment))

As to Amos, there is no evidence of any kind that he harassed Vargas, or participated in harassing actions of others, in 2009 or later.

*The "conspiracy."* The amended complaint alleges generally that the "conspiracy" continued through December 2009. (Amended Compl. ¶ 56) No evidence has been presented to substantiate that conclusory allegation. Vargas testified that after his lawyer sent a letter to Garfield Police, he was told by

some officers that other officers were "out to get [him]." (Vargas Dep. 185:15-16, 186:25-187:1) Vargas was unable, however, to give a time frame for the sending of that letter. Attached to the original complaint is a different letter, from Vargas's attorney to the State Attorney General. That letter is dated March 20, 2009, also outside the limitations period, and it describes events from 2007 and 2008. (Dkt. No. 8-1)

"*John Doe Prosecutor.*" This motion to dismiss is brought on behalf of the Garfield Officers, but I nevertheless consider the allegations regarding the unnamed prosecutor. The prosecutor's identity has not been confirmed in discovery, and presumably this defendant has never been served. The amended complaint alleges that "through the latter part of 2009, on dates unknown to Plaintiff at this time, but after May 28, 2009," certain defendants misrepresented the events set forth in the complaint to the prosecutor. (Amended Compl. ¶ 26A) The complaint also alleges that Vargas's attorney spoke to the Prosecutor's Office "over the entire course of 2009" regarding the allegations. (*Id.* ¶ 26B) Finally, the complaint alleges that the prosecutor's actions extended "from about June 2008 past May 2009 and through December 2009." (*Id.* ¶ 54A)

Again, the allegations are not backed by proofs. In his certification in opposition to the motion for summary judgment, Vargas mentions activities in 2009 only once, stating that "into 2009, [his attorneys] continued to speak to various officers of the Bergen County Prosecutor's Office about these allegations." (Vargas Cert. ¶ 20) No specific date in 2009 is provided. More fundamentally, Vargas's attorney's "speaking" to the prosecutor would not extend the statute of limitations as to wrongs allegedly committed by the Garfield Officers. *See* Section IV.B discussion of continuing violation theory.

In short, the defendants contend that no wrongful acts occurred at all, and the plaintiff has pointed to no evidence that any wrongful act occurred after May 18, 2009, *i.e.,* within the limitations period.

### B. Continuing violation theory

Vargas suggests that the 2007–08 events are not time-barred because they are part of a "continuing violation" that extended into the limitations period. The necessary showing, however, is lacking.

Under the continuing violation doctrine, a plaintiff may pursue claims where he can demonstrate that each of the alleged acts on the part of the defendants is part of a pattern or continuing practice and that at least one such act occurred within the statutory limitations period. *See Gould v. Borough*, 615 F. App'x 112, 116 (3d Cir. 2015); *see also Cowell v. Palmer Twp.*, 263 F.3d 286, 292 (3d Cir. 2001). A plaintiff relying on the doctrine must demonstrate a pattern, not merely "the occurrence of isolated or sporadic acts." *See Cowell*, 263 F.3d at 292. The doctrine is inapplicable when the plaintiff is aware of his injury at the time such injury occurs. *See Montanez v. Sec'y Penn. Dep't of Corr.*, 773 F.3d 472, 481 (3d Cir. 2014) (rejecting application of doctrine where plaintiff was aware of his injury shortly after its occurrence and failed to timely assert his rights). Furthermore, the doctrine applies only to "continual unlawful acts, not continual ill effects from an original violation." *Gould*, 615 F. App'x at 116 (citing *Weis-Buy Servs., Inc. v. Pagilla*, 411 F.3d 415, 423 (3d Cir. 2005)).

The continuous violation doctrine applies only where a pattern of wrongful acts extends into the limitations period. But, as established above, Vargas has pointed to no evidence of any wrongful act within the statutory two-year period that could anchor a continuous violation claim.

Furthermore, Vargas plainly was aware of his injuries at the time the allegedly wrongful acts were occurring. Indeed, not only did Vargas tell Officer Camiscioli that he felt harassed, but Vargas also tape-recorded conversations with police officers in 2007 in an effort to obtain evidence of the alleged harassment. Vargas's alleged injury, then, was known to him well before he asserted his rights and he failed to assert those rights within the two year statute of limitations.

In addition, the conversations with the prosecutor (assuming they would be actionable at all, and that they occurred after May 18, 2009), would not support a continuing violation theory. They were no more than continuing "ill effects" of the allegedly wrongful conduct by the police, not additional affirmative wrongful acts. *See Gould*, 615 F. App'x at 116 ("A government official's refusal to undo or correct a harm caused by the official's unlawful conduct is not an affirmative act for purposes of establishing a continuing violation.") (quoting *Tearpock-Martini v. Borough of Shickshinny*, 756 F.3d 232, 236 (3d Cir. 2014)).

All claims are therefore time-barred, and will be dismissed with prejudice. Because I find that all claims are time-barred, I do not reach the Garfield Officers' alternative grounds for summary judgment.

## V. CONCLUSION

For the reasons set forth above, the Garfield Officers' motion for summary judgment is **GRANTED,** and the amended complaint is **DISMISSED WITH PREJUDICE** because it is barred by the applicable two-year statute of limitations. An appropriate Order follows.

Dated: December 9, 2015

_____
HON. KEVIN MCNULTY, U.S.D.J.